IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Gary Steven Scott, #282106, )<br>Petitioner, )<br>)<br>vs. )<br>)<br>Warden Anthony Padula, )<br>)<br>Respondent. )<br>_____ ) | Civil Action No. 6:10-2190-JFA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

On July 16, 2000, police discovered the body of Glynis Page in the mobile home she shared with the petitioner (her live-in boyfriend) and her one-year-old daughter (App. 434-35, 380). Her body was badly beaten and bloodied (App. 426, 435). The petitioner was subsequently arrested (App. 452-53). Following his arrest, the petitioner was indicted during the October 2000 term of the Dillon County Grand Jury for armed robbery (#2000-GS-17-0790) and grand larceny (#2000-GS-17-0789) (App. 1011-14). The petitioner was also indicted during the December 2000 term of the Dillon County Grand Jury for murder (#2000-GS-17-0927) (App. 1017-18). On December 10-11, 2001, and February 4, 2002, a *Jackson v. Denno*, 378 U.S. 368 (1964) hearing was conducted before the Honorable James E. Lockemy prior to trial. The petitioner was represented by attorney

A. Lafon Legette, Jr., while the State was represented by Assistant Solicitors Deborah T. Nielsen and Sherri Baugh (App. 1).

Following the *Jackson v. Denno* hearing, the petitioner stood trial on February 12-14, 2002 (App. 366). He was found guilty and sentenced to life imprisonment without parole for murder. The petitioner also received a 20-year consecutive sentence for armed robbery and five years concurrent for grand larceny (App. 1004).

A notice of appeal was filed at the South Carolina Court of Appeals (*see* Notice of Appeal in #2000-GS-17-0643[1]). Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense, filed an Anders[2] brief (*see Anders* Brief of Appellant in #2000-GS-17-0643). In his brief, counsel argued the trial court erred in admitting the petitioner's statement, as the statement was allegedly obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981) (*see Anders* Brief of Appellant in #2000-GS-17-0643). In addition, the petitioner, pursuant to the *Anders* procedure, filed a *pro se* brief arguing the following (verbatim):

> I.      Did the trial court err in refusing to grant Appellant a directed verdict based upon four (4) factors that trial counsel established and based upon evidentiary findings. Those factors in which Appellant was entitled to a directed verdict consist of insufficiency of the evidence presented at trial; the State's failure to corroborate an alleged confession as is required by the corroboration rule as to the Corpus Delicti; the State's case was purely circumstantial to which the circumstances were not proven and circumstances did not coincide with each other to exclude any other reasonable hypothesis; the State also failed to place Appellant at the scene of the crime, when it happened and the State failed to prove Appellant committed the crime.

---

[1]The entire case number for the petitioner"s case is #2000-GS-17-0643; #2000-GS-17-0789; #2000-GS-17-0790; #2000-GS-17-0791; #2000-GS-17-0927. However, for brevity, the petitioner's criminal trial and subsequent direct appeal will be referred to herein as case #2000-GS-17-0643 when applicable.

[2]*Anders v. California*, 386 U.S. 738 (1967).

II.     Did the trial court err in failing to grant Appellant's motion to squash all indictments (00-GS-17-0789, 00-GS-17-0790, 00-GS-17-0791, 00-GS-17-0927) based on trial counsel's assertions that said indictments were unconstitutionally vague, that said indictment for murder was non-complaint with autopsy report as to the cause of death. Original indictment for murder alleged that the victim died from being beaten but the autopsy refuted this allegation, because victim died for carotid artery transection. This constituted a material variance.

III.    Did the trial court err in allowing the State to amend the murder indictment's cause of death, after defense attorney pointed out inconsistencies between indictment and proof.

IV.     Did the trial court err in refusing to excuse itself from hearing this particular case, on the grounds that it received information (from the investigator directly involved with this case) in an ex Parte manner regarding the statement in question, as well as the initiation of communication. Investigator's extrajudicial communication in judge's chambers was contrary to that of SLED agent, regarding the initiation of communication after Appellant invoked his right to have counsel present during interrogation.

V.      The Applicant was deprived of fundamental fairness which is guaranteed by the fourteenth amendment of the United States Constitution of due process. *Jackson v. Denno* hearings are held to determine voluntariness of alleged confessions, but trial judge never made a determination as to voluntariness which denied appellant of fair proceeding.

VI.     Did the trial court err in refusing to suppress statement allegedly made by Appellant and did trial court err in admitting into evidence, a tire tool, alleged by the State to have been the weapon inflicting the wounds on the deceased. The statement nor the tire tool proved anything at trial except that they weren't reliable in proving what they say they were going to prove and this had a prejudicial effect on the jurors. Surely this cannot be construed as a harmless error.

VII.    Due Process requires that no person be made to suffer the onus of a criminal conviction except upon sufficient proof, defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

3

VIII.    Did the trial court err in refusing to charge the alternative circumstantial evidence charge which would have given the jury further instructions as to what they could do with the statement.

IX.    Did the trial court err in qualifying Bruce Gantt, SLED, as an expert witness in blood splatter analysis over trial counsel's objection.

X.    Did the trial court lack Subject Matter Jurisdiction in hearing this case.

(Petitioner's *pro se* brief in #2000-GS-17-0643).

Pursuant to *Anders*, the Court of Appeals dismissed the petitioner's appeal and granted counsel's motion to withdraw. See *State v. Scott*, Op. No. 2004-UP-229 (S.C. Ct. App. filed March 31, 2004).  On April 8, 2004, the petitioner filed a petition for rehearing, which was subsequently denied on May 19, 2004. See Petition for Rehearing in #2000-GS-17-0643; Order Denying Rehearing in #2000-GS-17-0643.  The petitioner then filed a *pro se* petition for writ of certiorari at the South Carolina Supreme Court on June 7, 2004.[3] See Petition for Writ of Certiorari in #2000-GS-17-0643.  The Supreme Court denied certiorari on June 15, 2005, and the remittitur was issued six days later. See Order Denying Certiorari in #2000-GS-17-0643; Remittitur in #2000-GS-17-0643.

---

[3]In his petition for writ of certiorari, the following issues were raised: (1) "Ander's Brief should not have been filed in this case[;]" (2) "Petitioner was denied a fair direct appeal[;]" (3) "Petitioner is currently being held in confinement on insufficient (sic) proof defined as evidence[;]" (4) "Petitioner was convicted at trial solely on an uncorroborated confession[;]" (5) "The state's case was purely circumstantial and should not have been submitted to the petit jury[;]" (6) "The trial judge should have recused himself[;]" (7) "The trial court was without jurisdiction to try this case[;]" (8) "Petitioner's motion to quash should have been granted in regard to murder indictment because of the difference in the cause of death in the autopsy report and indictment[;]" (9) "Petitioner was entitled to a directed verdict[;]" (10) "Trial court abused its discretion[;]" (11) "Trial court erred in qualifying a sled agent in a specific area without enough schooling[;]" (12) "Trial court prejudiced the petitioner by not allowing the additional circumstantial evidence charge to be read[;]" (13) "There are Due Process violations in the case[;]" (14) "There are clear and admitted Miranda violations in this case[;]" (15) "The alleged confession in this case should have been suppressed, and it violates the Fifth Amendment to the United States Constitution[;]" (16) "The amendment in this case to the murder indictment increased the nature and seriousness of the offense charged, and increased the punishment the accused could receive."

4

On October 14, 2005, the petitioner filed an application for post-conviction relief ("PCR") (App. 1020-40).  In his application, the petitioner alleged the following:

1.    Ineffective assistance of trial counsel:

    a.    Failed to address certain issues.
    b.    Failed to object to the "trial court's ruling that the Applicant initiated communication with the authorities."
    c.    Failed to request a continuance in order "to have the measurements of the wounds to the victims head compared to that of the alleged murder weapon."
    d.    Failed to argue that, one month prior to the murder, the victim's car was vandalized.
    e.    Failed to challenge "the veracity of the alleged confession."
    f.    Failed to properly argue against the amendment of the murder indictment.
    g.    Failed to "make a motion to conduct a pre-trial hearing."

2.    Ineffective assistance of appellate counsel:

    a.    Failed to brief meritorious issues that were preserved for appeal.
    b.    Failed to argue trial court bias.
    c.    Failed to make a record sufficient for review.

3.    Insufficiency of the evidence presented at trial.

4.    Trial court error:

    a.    Failed to grant motion to quash murder indictment.
    b.    Failed to grant motion for directed verdict.
    c.    Abuse of discretion.
    d.    Error in qualifying expert witness.
    e.    Error in not charging an additional circumstantial evidence charge.

5.    Subject matter jurisdiction

6.    "Multiple violations of Due Process."

7.    "Violation of Miranda rights as well as 5th Amend."

(App. 1020-40).

In response, the State filed a return requesting an evidentiary hearing on the ineffective assistance of trial counsel claims (App. 1043-44). The State further argued the petitioner's ineffective assistance of appellate counsel claims were without merit (App. 1044). Addressing the petitioner's claims of trial court error, the State highlighted that the issues raised by the petitioner were not cognizable PCR claims pursuant to *Simmons v. State*, 215 S.E.2d 883 (1974) and *Drayton v. Evatt*, 430 S.E.2d 517 (1993) (App. 1045). Responding to the petitioner's subject matter jurisdiction claim, the State argued the trial court had jurisdiction to hear the petitioner's case under *State v. Gentry*, 610 S.E.2d 494 (2005) (App. 1045). Finally, addressing the petitioner's constitutional claims, the State noted the petitioner "does not specify the grounds upon which these alleged constitutional violations are based" (App. 1046). Continuing, the State noted that the vagueness of the petitioner's constitutional claims made it "impossible for the Respondent to respond" and noted that the petitioner failed to make a *prima facie* case for relief under *Welch v. MacDougall*, 143 S.E.2d 455 (S.C. 1965), and *Blandshaw v. State*, 140 S.E.2d 784 (S.C. 1965) (App. 1046).

On October 16, 2007, an evidentiary hearing was conducted before the Honorable Paul M. Burch in Darlington (App. 1049-87). The petitioner was represented by attorney R. Scott Joye, while the State was represented by Assistant Attorney General Karen C. Ratigan (App. 1049). Thereafter, the PCR court issued an order denying PCR. The PCR court found that the petitioner did not meet his burden of proving ineffective assistance of trial counsel (App. 1092-96). The PCR court further found that the petitioner failed to meet his burden of proving his ineffective assistance of appellate counsel claims (App. 1096-98). Finally, addressing the petitioner's other allegations, the PCR court noted:

> As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet

his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

(App. 1098).

Following the denial of his PCR application, PCR counsel timely filed and served a notice of appeal, and on August 26, 2008, submitted a *Johnson* Petition for Writ of Certiorari.[4] See Notice of Appeal in #2005-CP-17-0363; *Johnson* Petition for Writ of Certiorari in #2005-CP-17-0363.  In his *Johnson* petition, counsel argued "the PCR judge erred in refusing to find trial counsel ineffective for failing to:  (a)  [s]ufficiently challenge Judge Lockemy's ruling on statements made by Scott while in the custody of the Dillon County Sheriff's Office[;] (b)  [s]ufficiently challenge Judge Lockemy's ruling that certain evidence found on Scott should have been excluded at trial, including the victim's key and driver's license[;] [and] (c)  [s]ufficiently investigate a defense for Scott that the victim's car was vandalized one month prior to her murder." See *Johnson* Petition for Writ of Certiorari in #2005-CP-17-0363.  Additionally, counsel briefed the issue of "[w]hether the PCR judge erred in refusing to find appellate counsel ineffective for failing to file a meritorious brief on appeal." *See Johnson* Petition for Writ of Certiorari in #2005-CP-17-0363.  Additionally, the petitioner, pursuant to the *Johnson* procedure, filed a *pro se* brief alleging the following:

I.    Whether the P.C.R. Judge Abused (sic) his discretion in failing to find that:

a.    Police initiated Communication with Scott after he invoked his right to Counsel.
b.    The State failed to corroborate alleged confession as is required by the corroboration rule as to the Corpus Delicti or provide proof Aliunde,
c.    Scott was entitled to a directed verdict
d.    Judge Lockemy's ruling as to initiation was erroneous and constituted an Abuse of Discretion

---

[4]*Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

7

      e.     There exist violations of 4,5,6 and 14 amendments of Scott afforded to him through the U.S. Constitution.

II.    Whether P.C.R. Judge erred in refusing to find trial counsel ineffective for failing to:

      a.     Sufficiently challenge Judge Lockemy's ruling on statement allegedly made by Scott while in custody of the Dillon Co. Sheriffs Dept. and after clear invocation of the right to Counsel and right to silence,

      b.     Sufficiently challenge Judge Lockemy's ruling that certain evidence found on Scott should've been excluded at trial including the victim's car keys and drivers license.

      c.     Sufficiently investigate a defense for Scott that the victims car was vandalized one month prior to her murder.

III.    Whether P.C.R. Judge erred in refusing to find Appellate Counsel ineffective for failing to file a meritorious brief on Appeal.

IV.    Whether P.C.R. Judge erred in failing to set forth specific findings of fact and conclusions of law.

*See* Petitioner's *Pro se* Brief in #2005-CP-17-0363.

Following briefing, the case was transferred to the Court of Appeals, where certiorari was denied. See Order Transferring *Scott v. State* to Court of Appeals; Order Denying Certiorari in *Scott v. State*, filed March 2, 2010. The remittitur was sent on March 18, 2010. See Remittitur in #2005-CP-17-0363.

In his action now before this court, the petitioner alleges he is being held unlawfully for the following reasons: (1) his right to counsel was violated during a custodial interrogation; (2) "Fifth Amendment Deprivation[;]" (3) "Insufficiency of the Evidence[;]" (4) "Ineffective Assistance of Appellate Counsel[;]" (5) "Ineffective Assistance of Appellate Counsel from PCR[;]" (6) "Violation of Fourth Amendment[;]" (7) "Ineffective Assistance of trial counsel[;]" and (8) "Violations of Fourteenth Ammend."

8

On December 21, 2010, the respondent filed a motion for summary judgment. By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his opposition to the motion for summary judgment on January 25, 2011.

## APPLICABLE LAW AND ANALYSIS

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in

9

"square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

As set forth below, this court finds that each of the petitioner's grounds for relief fails on the merits.

### Grounds One and Two

In his first ground for relief, the petitioner argues, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Edwards v. Arizona*, 451 U.S. 477 (1981), that his Fifth Amendment right to counsel was violated when, after invoking his right to counsel, police allegedly returned to question him. Specifically, the petitioner points out that *Edwards* prohibits additional questioning once an accused has invoked his right to counsel unless the accused initiates further communication with the police. Similarly, in his second ground for relief, the petitioner argues he invoked his right to silence by the invocation of his right to counsel, and thus his right to silence was simultaneously violated when police began to question him following his initial invocation of his right to counsel.

The trial court concluded that the post-invocation contact at issue here, serving the petitioner with his copy of the arrest warrant, did not amount to a further attempt

10

to question the petitioner, but instead constituted an "administerial function" (App. 253). The petitioner was picked up in Kingstree by Williamsburg County authorities after Dillon County deputies discovered the dead body of his live-in girlfriend in the couple's trailer in Latta (App. 653-54). The petitioner agreed to accompany authorities back to the Williamsburg County Investigator's Office for questioning, but was not under arrest at the time and was informed of this by Chief Investigator Ken Harvey upon his arrival at the office (App. 654, 684-86, 690-91). Harvey began to question the petitioner, and the petitioner denied any knowledge of the victim's death (App. 36). When Harvey asked the petitioner how he got to Kingstree from Latta, the petitioner responded he was given a ride by an unidentified person who dropped him off at an unidentified female's house in the country (App. 37).

Following this exchange, the petitioner told authorities he had to use the restroom (App. 126-27). As the public restroom was locked, he was directed to an employee restroom, but was asked to empty his pockets before going in (App. 127-28, 477). When the petitioner emptied his pockets, he handed police the victim's keys and driver's license (App. 127-28, 474, 476-77). Upon his return from the bathroom, Harvey arrested and Mirandized the petitioner at which point the petitioner invoked his right to counsel (App. 40-41, 129, 481). Subsequently, an arrest warrant was faxed from Dillon County. After being countersigned by a Williamsburg County magistrate, the warrant was served upon the petitioner (App. 655, 691, 693-94). Following service of the faxed copy of the arrest warrant, the petitioner was transported to the Dillon County Detention Center (App. 655, 694).

The following day, investigators, pursuant to the Sheriff's directive, arrived at the Dillon County Detention Center to serve the petitioner with an original copy of the arrest warrant (the yellow copy) (App. 656-57). After the warrant was read to him, the petitioner asked investigators if it was too late to cooperate (App. 658). Investigator Harvey

11

responded that it was not too late to cooperate, and, as result of this conversation, the petitioner was taken to the Sheriff's Office for questioning and was Mirandized again (App. 658-59). The petitioner waived his rights then admitted to killing the victim in an effort to obtain money to feed his crack addiction (App. 658-61, 668-72). The statement was witnessed by Captain James Campbell (App. 673).

In ruling on defense counsel's pre-trial motion *in limine* concerning the *Edwards* issue, the trial court found the petitioner's right to counsel was not violated as the police initiated contact with the petitioner for the limited purpose of serving the original copy of the arrest warrant, which the trial court described as "an administerial function" (App. 253). This issue was raised again during trial, and the trial court admitted the statement over defense counsel's objection (App. 664-65). The issue was then raised on appeal in an *Anders* brief. Counsel was relieved, and the court denied the petitioner's remaining claims.

In *Miranda*, the United States Supreme Court held that police must advise a suspect of his right to counsel and, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474. More than 15 years later, in *Edwards*, the Court explained, "[I]t is inconsistent with *Miranda* and its progeny for authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U.S. at 485. Thus, where the accused has "expressed his desire to deal with the police only through counsel," authorities may not question him "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. Furthermore, "[i]f the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect

12

executes a waiver and his statements would be considered voluntary under traditional standards." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).

As argued by the respondent, the purpose of *Edwards* is to prevent police from badgering the accused. *Smith v. Illinois*, 469 U.S. 91, 98 (1984).  Thus, authorities cannot interrogate a suspect despite his request for counsel "in the hope that [he] might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all." *Id.* at 99 (citation omitted).  In fact, even after a suspect has spoken with counsel, "officials may not reinitiate interrogation without counsel present." *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990).

In *Smith*, the Supreme Court focused on two elements when examining whether a statement has been obtained in violation of *Edwards*. 469 U.S. at 95.  First, "whether the accused actually invoked his right to counsel." *Id*.  And, if so, who initiated the further discussions that resulted in the statement. *Id*.  Where the accused, after invoking his right to counsel, neither initiated further discussion with the police, nor knowingly and intelligently waived the right he invoked, the statement procured by the police will be inadmissible. *Id*.

This court finds that the state court's ruling was not contrary to nor did it involve an unreasonable application of *Edwards* or its progeny.  The courts in *Edwards*, *McNeil*, *Smith*, and *Minnick* have all focused on who initiated the discussion, conversation, or questioning that resulted in the statement.  Thus, while it is true that the authorities may have initiated in the encounter with the petitioner, it cannot be said that their actions initiated the *discussions* that resulted in the statement. See *Mann v. Scott*, 41 F.3d 968, 975 (5th Cir. 1994) (finding that, on a trip to the hospital for the petitioner to give a blood sample, the petitioner initiated the conversation with police officers that led to his confession).  The petitioner could have remained silent or reasserted his request for an attorney upon being served with the warrant. Instead, the petitioner asked whether he could still cooperate with

13

investigators.  Moreover, upon being reminded of his *Miranda* rights, the petitioner stated he wished to waive his rights, specifically his right to counsel, and in fact included the waiver within his statement (App. 666-69).  Based upon the foregoing, neither the petitioner's right to counsel nor his right to silence were violated.  Accordingly, these grounds for relief fail.

### *Ground Three*

In his third ground for relief, the petitioner alleges "[i]nsufficiency of the evidence[.]"  In support of this claim, the petitioner argues that trial counsel "moved for a directed verdict at least twice thereby preserving the issue for appellate review, but [a]ppellate counsel did not pursue the issue on appeal" (pet. at 8).  The petitioner further maintains "the alleged confession was heavily relied on, but was not corroborated" (pet. at 8).  In the memorandum of law accompanying his petition, the petitioner cites *Jackson v. Virginia*, 443 U.S. 307 (1979) stating, "[D]ue process requires that no person be made to suffer the onus of a criminal conviction, upon which there is a loss of life and liberty, except upon sufficient proof of fact beyond a reasonable doubt" (pet. mem. at 4).

Federal court review concerning sufficiency of the evidence claims is "sharply limited." *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).  "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Id.* at 405-406 (citing *Wright*, 505 U .S. at 292). With this in mind, the standard of review regarding sufficiency of the evidence claims in criminal cases is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  In other words, a habeas petitioner "is entitled to relief only if 'no rational trier of fact could have

found proof of guilt beyond a reasonable doubt.'" *Wilson*, 155 F.3d at 406 (quoting *Jackson*, 443 U.S. at 324)).

Here, the state court did not unreasonably apply the facts in light of the evidence as presented in state court as required under Section 2254(d)(2). Furthermore, as argued by the respondent, the petitioner's allegations are not enough to overcome Section 2254(e)(1)'s presumption of correctness, which must be overcome by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1) (stating a determination of a factual issue made by a state court is presumed to be correct and the petitioner must rebut the presumption by clear and convincing evidence).

The petitioner's counsel moved for a directed verdict on the armed robbery, grand larceny, and murder charges, which the trial court denied (App. 752-56, 756-60, 760-61). Specifically, counsel argued the armed robbery was not an armed robbery because there was a question as to whether the victim was alive when the petitioner took the money from her person (App. 752-56). In *State v. Moore*, 649 S.E.2d 84 (S.C. Ct. App. 2007), the South Carolina Court of Appeals explained the law on robbery and armed robbery as follows:

> Armed robbery occurs when a person commits robbery while either armed with a deadly weapon or alleging to be armed by the representation of a deadly weapon. S.C. Code Ann. § 16-11-330 (2003); *see also State v. Al-Amin*, 353 S.C. 405, 424, 578 S.E.2d 32, 42 (Ct. App. 2003) ("Armed robbery occurs when a person commits robbery either while armed with a deadly weapon or while the person was alleging he was armed and was using a representation of a deadly weapon."). Included in armed robbery is the lesser included offense of robbery. *State v. Scipio*, 283 S.C. 124, 125-126, 322 S.E.2d 15, 16 (1984). Our statutory scheme specifies that the definition of robbery is to be provided by South Carolina's common law. *See* S.C. Code Ann. § 16-11-325 (2003) (stating: "The common law offense of robbery is a felony. Upon conviction, a person must be imprisoned not more than fifteen years."); *see also Al-Amin*, 353 S.C. at 424, 578 S.E.2d at 42 ("Our statutory scheme provides that the crime of robbery is defined by the common law.").

15

"Robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear." *Al-Amin*, 353 S.C. at 424, 578 S.E.2d at 42 (citing *State v. Parker*, 351 S.C. 567, 571 S.E.2d 288 (2002); *Joseph v. State*, 351 S.C. 551, 571 S.E.2d 280 (2002)). Our supreme court has described robbery as "the felonious taking and carrying away of goods of another against the will or without consent." *State v. Scipio*, 283 S.C. 124, 126, 322 S.E.2d 15, 16 (1984). "The gravamen of a robbery charge is a taking from the person or immediate presence of another by violence or intimidation." *State v. Rosemond*, 356 S.C. 426, 430, 589 S.E.2d 757, 758-59 (2003) (citing *State v. Hiott*, 276 S.C. 72, 276 S.E.2d 163 (1981)). "When determining whether the robbery was committed with intimidation, the trial court should determine whether an ordinary, reasonable person in the victim's position would feel a threat of bodily harm from the perpetrator's acts." *Rosemond*, 356 S.C. at 430, 589 S.E.2d at 759.

649 S.E.2d at 88.

Here, there was no evidence that the petitioner took the victim's money, car, and other goods before her death. However, it is not essential that the victim in an armed robbery must be alive when the robbery occurs. Rather to be guilty of armed robbery in conjunction with a homicide, the State must prove the victim's death and the taking are part of a continuous chain of events so interconnected as to be inseparable. See *State v. Damon*, 328 S.E.2d 628, 631 (S.C.1985), cert. denied, 474 U.S. 865 (1985), overruled in part on other grounds, *State v. Torrence*, 406 S.E.2d 315 (S.C. 1991); 67 Am.Jur.2d Robbery § 14 (2009) ("[A] taking from the body of one already dead is a taking 'from the person' if the death and the taking are so connected as to form a continuous chain of events."); 77 C.J.S. Robbery § 9 (2009) ("Although, as an abstract principle of law, one ordinarily cannot be guilty of robbery if the victim is a deceased person, this principle does not apply where a robbery and homicide are a part of the same transaction and are so interwoven with each other as to be inseparable. If the taking was made possible by an antecedent assault, the offense is robbery regardless of whether the victim died before or

16

after the taking of the property."). See also, e.g., *Jones v. State*, 652 So.2d 346, 350 (Fla.1995), cert. denied, 516 U.S. 875 (1995) (finding violent murders and taking of victims' property were part of continuous acts and therefore supported robbery convictions); *Oglesby v. State*, 256 S.E.2d 371, 374 (Ga.1979) (affirming trial judge's denial of directed verdict for armed robbery where defendant contended the taking of the victim's property did not occur until after the victim either was comatose or dead); *State v. Fields*, 337 S.E.2d 518, 524-25 (N.C.1985) (holding, in a case involving convictions for first-degree murder, armed robbery, felony murder, and second-degree burglary, "[a]ll that is required is that the elements of armed robbery occur under circumstances and in a timeframe that can be perceived as a single transaction"); *People v. Childs*, 615 N.Y.S.2d 972, 975 n. 3 (N.Y.Sup.Ct.1994) (discussing jurisdictions that have upheld robbery convictions concerning dead victims).

Here, the State's evidence and the reasonable inferences therefrom tended to create a jury issue as to whether the petitioner was guilty of armed robbery. In his statement (App. 669-70), the petitioner stated that he wanted the victim's money so he could buy crack. He retrieved a "jack handle, black" from under the bed and hit the victim in the back of the head with it. He continued to hit her with the weapon until she fell to the floor. He then took money out of the victim's bra and went to buy crack. He then came back and took the car, tv, computer, and microwave (App. 670). Clearly, the murder and armed robbery were part of a single transaction, and there is evidence from which a rational trier of fact could conclude that the petitioner was guilty of armed robbery.

The petitioner was indicted for larceny in excess of $5,000 under South Carolina Code Section 16-13-30(B)(2) (*see* App. 1011). Grand larceny is defined under that statute as follows:

17

(B) Larceny of goods, chattels, instruments, or other personalty valued in excess of one thousand dollars is grand larceny. Upon conviction, the person is guilty of a felony and must be fined in the discretion of the court or imprisoned not more than:

(1) five years if the value of the personalty is more than one thousand dollars but less than five thousand dollars;
(2) ten years if the value of the personalty is five thousand dollars or more.

S.C. Code Ann. § 16-13-30. At trial, defense counsel questioned whether the goods taken from the victim were worth $5,000 or more (App. 756-60). The trial judge ruled that he would charge the jury on the three levels of larceny: petit, grand larceny between $1,000 and $5,000, and grand larceny above $5,000 (App. 901, 965-66). The jury found the petitioner guilty of larceny in excess of $1,000, but less than $5,000 (App. 991, 1012), and the trial judge sentenced him to five years on that count.

Thus, the question in federal habeas is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5] The State presented evidence the petitioner stole a car, a computer, a television, and a microwave, among other things (App. 670). The car was purchased for $4,000 (App. 402). Additionally, there was testimony estimating the value of the remaining goods at the time of their purchase was $1,000 (App. 401-03). Accordingly, there is evidence to support the petitioner's conviction of grand larceny in excess of $1,000 but less than $5,000.

Finally, defense counsel argued the petitioner was entitled to a directed verdict on the murder charge because there was allegedly conflicting evidence between a SLED analyst and the forensic pathologist (App. 760). As stated above, the question presented under *Jackson* on federal habeas review is simply whether there was any

---

[5]The respondent argues that the question in federal habeas is whether there was evidence to support the jury's conclusion that the value of the goods the petitioner stole was more than $5,000 (resp. m.s.j. at 31). However, as discussed above, the petitioner was actually found guilty of larceny of goods valued in excess of $1,000 but less than $5,000.

evidence from which a rational trier of fact could conclude the petitioner murdered the victim. In light of the fact that the petitioner confessed to beating the victim to death and the circumstantial evidence, at a minimum, shows the petitioner was in the house during the time which death occurred (*see* App. 763 (evidence included petitioner's bloody footprint in the victim's home, the victim's keys and driver's license were found in his pocket, and there was blood on the petitioner's sock)), there is evidence to support the petitioner's conviction. Accordingly, this ground for relief fails.

### Ground Four

The petitioner further claims appellate counsel was ineffective for filing an *Anders* brief. Specifically, he argues counsel erred in filing the *Anders* brief because there "were more than several issues properly preserved for appellate review" (pet. at 10). In ruling on this claim, the PCR court ruled as follows:

> The Applicant also alleges he received ineffective assistance of appellate counsel. Initially, this Court notes it finds appellate counsel's testimony to be more credible than that offered by the Applicant.
>
> The Applicant stated appellate counsel filed a no merit *Anders* brief when there were several meritorious issues in his case. The Applicant stated, for example, that appellate counsel should have briefed both the directed verdict issue and whether the victim's keys and license were improperly seized from his person. The Applicant also stated appellate counsel should have explained he had the right to file a petition for writ of certiorari to the state Supreme Court.
>
> Appellate counsel testified he had been employed by the South Carolina Office of Appellate Defense since 1985. Appellate counsel testified the facts in this case were bad and that there was evidence of the Applicant's guilt. Appellate counsel testified there was evidence the Applicant had initiated the conversations with police that were ultimately self-incriminating. Appellate counsel testified he uses his experience to sift through the evidence and brief good issues. Appellate counsel stated he would have briefed the issue regarding the victim's keys and license if it had been a good issue. Appellate counsel stated he likely did not inform the Applicant of the right to file a

19

petition for writ of certiorari after the dismissal of his *Anders* appeal, but stated that he probably does not have to render such advice.

In assessing a claim of ineffective assistance of appellate counsel, courts apply the *Strickland* test to determine if appellate counsel was deficient for failing to raise an issue and whether the defendant was prejudiced from the failure to raise the issue. *See Southerland v. State*, 337 S.C. 610, 616, 524 S.E.2d 833, 836 (1999). However, counsel is not required to raise every non-frivolous claim, but instead may select among them in order to maximize the likelihood of a favorable outcome. *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 765 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308 (1983)).

This Court finds the Applicant failed to meet his burden of proving ineffective assistance of appellate counsel. This Court finds appellate counsel is an experienced appellate lawyer who relied upon his experience to determine the Applicant's appeal was best served through an *Anders* brief. This Court notes that, in an *Anders* brief, the entire record is reviewed by the appellate court. *See State v. McKennedy*, 348 S.C. 270, 279, 559 S.E.2d 850, 855 (2002) ("The purpose of filing a brief under *Anders* is to ensure the merits of the appeal are not overlooked. The court has to conclude independently, regardless of counsel's conclusion, whether or not the appeal has merit before it can dismiss the appeal."). As the appellate court did not order the parties to brief additional issues, it is clear there were no meritorious issues in the appeal. This Court further finds that, as an *Anders* appeal was warranted in this case, it was not necessary for appellate counsel to advise the Applicant of the right to file a petition for writ of certiorari. Regardless, the Applicant cannot prove any prejudice in this regard, as he filed a *pro se* petition that was reviewed and dismissed by the South Carolina Supreme Court.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the *Strickland* test - that appellate counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that appellate counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of *Strickland* - that he was prejudiced by appellate counsel's performance. This Court concludes the Applicant has not met his burden of proving appellate counsel failed to render

20

reasonably effective assistance. *See Frasier v. State*, 351 S.C.
at 389, 570 S.E.2d at 174.

(App. 1096-98).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

Here, the PCR court's determination was neither "contrary to, [n]or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" under Section 2254(d)(1). Under the *Anders* procedure, the appellate court, after reviewing the entire record, may deny counsel's request to be relieved and instruct counsel to brief any issue that it deems meritorious. *State v. McKennedy*, 559 S.E.2d 850, 855 (S.C. 2002). Instead, the Court of Appeals, after a complete review of the record, agreed with appellate counsel's assertion that the appeal lacked merit and therefore granted counsel's motion to be relieved. Accordingly, the PCR court correctly determined that counsel's performance was not deficient as there was no arguable issue of merit in the record. Moreover, as there is no right to counsel when seeking discretionary review, appellate counsel was not ineffective in failing to advise the

21

petitioner that he could petition for certiorari. *See Ross v. Moffitt*, 417 U.S. 600, 610 (1974) (holding due process does not require a state to provide an indigent defendant, who had appealed as of right to state intermediate appellate court, with counsel on his discretionary appeal to state Supreme Court).   Furthermore, even assuming that such a failure did amount to error, any error would not meet *Strickland*'s prejudice requirement as the petitioner filed a *pro se* petition for writ of certiorari in the Supreme Court of South Carolina. Based upon the foregoing, this ground for relief fails.

### Ground Five

In his fifth ground for relief, the petitioner argues PCR appellate counsel, who was also his PCR counsel, was ineffective for failing to file a Rule 59(e), SCRCP motion following issuance of the order dismissing the petitioner's PCR claims. "Ineffective assistance of PCR counsel is not a ground for federal habeas relief." *Adams v. Knowlin*, C/A No. 2:10-2195-CMC-BHH, 2011 WL 2730921, at *1 n.2 (D.S.C. July 13, 2011) (slip copy) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)).   Accordingly, this ground for relief fails.

### Ground Six

In his sixth ground for relief, the petitioner contends his Fourth Amendment rights were violated when "the victim[']s drivers license and keys were found" in his possession (pet. at 12).  In support of his claim for relief, the petitioner states the police had no warrant and no probable cause to search him and that the "policy of searching anyone who used the restroom in question was clearly pretextual" (pet. at 12).

In *Stone v. Powell*, 428 U.S. 465, 493 (1976), the United States Supreme Court concluded that a Section 2254 petitioner is barred from receiving habeas corpus relief on free-standing Fourth Amendment claims so long as the state provided the petitioner with an opportunity for full and fair litigation of the claims in state court. 428 U.S. at 490-95.

22

Here, the petitioner had the opportunity to litigate the admissibility of the keys and driver's license and in fact did so in state court (*see* App. 1095 (noting "trial counsel did attempt to prevent these items from being admitted into evidence and that the trial judge denied that request")).  As such, he is prohibited from receiving relief on this claim.

***Ground Seven***

In his seventh ground for relief, the petitioner claims trial counsel rendered deficient performance when he failed to investigate a previous incident where the victim's car was purportedly vandalized one month prior to her death.  In support of this claim, the petitioner argues that this could have been accomplished by contacting the victim's former insurance agency.  The petitioner further argues trial counsel was ineffective in failing to sufficiently object to the trial court's ruling regarding the issue of whether the petitioner or the police initiated contact.  Finally, the petitioner argues trial counsel was ineffective in failing to sufficiently challenge the trial court's ruling regarding the admissibility of the victim's car keys and license, which the petitioner alleges were acquired in violation of his Fourth Amendment rights.

The PCR court addressed these claims as follows:

The Applicant alleges he received ineffective assistance of trial counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." *Frasier v. State*, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002) (citing Rule 71.1(e), SCRCP).

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2)  that he was prejudiced by his counsel"s ineffective performance.  *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984); *Sanchez v. State*, 351 S.C. 270, 274-75, 569 S.E.2d 363, 365 (2000). In order to prove prejudice, an applicant must show "there is a reasonable probability that, but for counsel"s unprofessional errors, the result of the proceeding would have been different." *Cherry v. State*, 300 S.C. 115, 117-18, 386 S.E.2d 624, 625 (1989). "A reasonable probability is a probability sufficient to

23

undermine confidence in the outcome of trial." *Johnson v. State*, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052).

The Applicant stated trial counsel should have challenged the judge's finding that he initiated the conversation with police in Dillon after he had been advised of his *Miranda* rights. The Applicant stated the police initiated the conversation and that they never served him with a copy of his arrest warrant (which was the reason they gave for coming to see him at the detention center). The Applicant stated trial counsel did not sufficiently challenge the voluntariness of his written statement. The Applicant admitted trial counsel did challenge the statement, but argued he should have done it more vigorously. The Applicant also stated trial counsel should have challenged the corpus delicti of the written statement. The Applicant said trial counsel should have investigated the fact that the victim's car had been previously vandalized. The Applicant said trial counsel should have challenged the admission of the victim's keys and driver's license – which were removed from his person at the police department in Williamsburg. The Applicant admitted the State had incriminating evidence against him.

Trial counsel testified the Applicant gave both oral and written statements in this case. Trial counsel testified he discussed the statements with the Applicant before trial. Trial counsel testified he attempted to suppress the statements. Trial counsel testified that, regardless of these statements, there were several pieces of evidence against the Applicant. Trial counsel stated he looked into the question of the arrest warrant in this case and found there was no problem. Trial counsel recalled the Applicant asking him about the victim"s vandalized car, but stated there was no way to investigate that. Trial counsel stated he did not specifically recall attempting to exclude the victim's keys and license, but that he would was sure he did so. Trial counsel stated this was a bad case with bad facts against the Applicant. Trial counsel stated he could not have done anything differently at trial that would have resulted in an acquittal.

This Court finds the Applicant's testimony is not credible, while also finding trial counsel's testimony is credible. This Court further finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds the Applicant failed to meet his burden of proving ineffective assistance of trial counsel.

6:10-cv-02190-JFA    Date Filed 07/28/11    Entry Number 28    Page 25 of 28

This Court finds the Applicant failed to meet his burden of proving trial counsel did not adequately and properly attempt to have the Applicant's oral and written statements suppressed. This Court notes there were *Jackson v. Denno* hearings in this case in which trial counsel attempted to suppress these statements. This Court notes trial counsel was successful in having one of the Applicant's oral statements suppressed. (R.pp.357-59).[6] Trial counsel used several arguments to argue against the admission of the remaining statements – including that the Applicant had not initiated the conversation in the Dillon County Detention Center – but that the trial judge ruled against him. (R.pp.600-05). The trial judge found the written statement to be voluntary and admissible, and this was not reversed on appeal. (R.pp.357-59).

This Court finds the Applicant failed to meet his burden of proving trial counsel should have investigated the fact that the victim's car had been previously vandalized. This Court finds it speculative to discuss whether the alleged damage to the victim's car could have been the result of the act of a third party with a grudge against the victim. This Court also notes the Applicant did not explain how trial counsel should have investigated the alleged incident.

This Court finds the Applicant failed to meet his burden of proving trial counsel was ineffective regarding the admission of the victim's keys and driver's license at trial. These items were taken from the Applicant's possession when he was at the Williamsburg County Sheriff's Department. This Court notes trial counsel did attempt to prevent these items from being admitted into evidence and that the trial judge denied that request. (R.pp.432-42). This Court notes the Applicant did not articulate what other legal means trial counsel could have pursued in order to exclude those items.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the *Strickland* test – that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant.

This Court also finds the Applicant has failed to prove the second prong of *Strickland* – that he was prejudiced by trial

---

[6]Citations to the record are to the Record on Appeal that was submitted to the South Carolina Court of Appeals in the direct appeal of this case.

counsel's performance. This Court notes that, contrary to the
Applicant"s assertion, the his written statement was not the
"cornerstone" of the State's case against him. The Applicant's
bloody footprint was found in the victim's home. (R.p.660;
p.664; p.671). At the Williamsburg County Sheriff's Department,
the victim's keys and driver's license were found in the
Applicant's pocket. (R.p.557). The victim's car was found in
Williamsburg County. (R.p.759). When the Applicant was
arrested and his clothes taken for processing, there was blood
on his socks. (R.p.501). The Applicant helped police locate
several items missing from the victim's home. (R.pp.551-52).
The Applicant admitted at the evidentiary hearing that this
evidence was used against him at trial.

This Court concludes the Applicant has not met his burden of
proving trial counsel failed to render reasonably effective
assistance as his defense attorney. *See Frasier v. State*, 351
S.C. at 389, 570 S.E.2d at 174.

(App. 1092-96).

The PCR court correctly concluded that trial counsel's performance was
neither deficient nor prejudicial. Specifically, regarding the investigation issue, the PCR
court determined that, based upon the evidence presented, the petitioner could only
speculate as to the potential effect further investigation would have had on his defense.
With regard to the claim that counsel failed to sufficiently object to the trial court's ruling on
whether he or the police were the initiating party, the PCR court was correct in finding that
counsel's performance was not deficient under *Strickland*. Counsel objected under
*Edwards* and strenuously argued that the police, not the petitioner, initiated the
conversation that ultimately led to the petitioner's statement, but the trial court ruled against
him (App. 253, 664-65). Further, as found by the PCR court, trial counsel sufficiently
objected to the introduction of the victim's keys and license (*see* App. 453). The PCR court
correctly found that the petitioner failed to show counsel's representation was deficient
because (1) the PCR court believed counsel's objection was sufficient, and (2) the
petitioner did not establish what else could have been done to limit the introduction of the

testimony at issue.  Furthermore, the PCR court correctly concluded that even if counsel's objection was not sufficient, the petitioner could not satisfy *Strickland*'s prejudice prong because there was a variety of evidence demonstrating the petitioner's guilt.  As such, the PCR court's determination was neither "contrary to, [n]or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" under Section 2254(d)(1).  Accordingly, this ground for relief fails.

***Ground Eight***

Lastly, the petitioner contends the aggregate effect of the aforementioned allegations result in a denial of due process.  "'The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.'" *U.S. v. Basham*, 561 F.3d 302, 330 (2009) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)).  "However, if a court determine[s] . . . that none of [a defendant's] claims warrant reversal individually, it will decline to employ the unusual remedy of reversing for cumulative error." *Id.* (internal quotations omitted).  To satisfy this requirement, the errors complained of must "'so fatally infect the trial that they violated the trial's fundamental fairness.'" *Id.* (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)).  Since there are no errors at issue here, cumulative error simply does not apply.  Accordingly, this ground for relief fails.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 22) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

July 28, 2011
Greenville, South Carolina

27

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.